USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/7/09

toUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MICHELE J. LUONGO,                  :   07 CV 11282 (LAP)
                                    :
              Plaintiff,            :
                                    :
     v.                             :
                                    :   ORDER
ST. PAUL TRAVELERS (formerly known  :
as the St. Paul Travelers           :
Companies, Inc., now known as the   :
Travelers Companies, Inc.)          :
                                    :
              Defendant.            :
------------------------------------X

LORETTA A. PRESKA, United States District Judge:

　　Plaintiff Michele J. Luongo, who voluntarily resigned her position with Defendant St. Paul Travelers ("Travelers") to take a higher paying position with a competitor, has asserted discrimination claims based on her age and race and a hostile work environment claim under the ADEA and Title VII. Defendant has moved for summary judgment, and for the reasons set out below, that motion is GRANTED.

I.   BACKGROUND

　　A.　Plaintiff's Employment with Travelers

　　On February 28, 2005, Plaintiff was hired by Gulf Insurance--a subsidiary of Travelers--as a Reinsurance Claims Analyst. (Affidavit of Joel E. Cohen Esq., sworn to December 19, 2008 ("Cohen Aff."), Ex. 1, Deposition of Michele J. Luongo,

1

taken July 25, 2008 ("Pl. Dep.") at 4-5.)  Plaintiff interviewed with Lawrence Lutzack ("Mr. Lutzak"), the then-head of the Ceded Reinsurance Claims Department. (Id. at 10-13.)  Significantly, Plaintiff was 45 years old at the time she was hired. (Id. at 4-5.)

As a Reinsurance Claims Analyst, Plaintiff was responsible for providing claims services to reinsurance brokers. (Id. at 5.)  In this regard, Plaintiff's responsibilities generally included: (i) reviewing and closing files; (ii) reviewing invoices; (iii) acknowledging requests for information; and (iv) reconciling account balances. (Id. at 5-6.)  Initially upon her hire, Plaintiff reported directly to Mr. Lutzak. (Id. at 13.)  However, in or around June 2005, Mr. Lutzak left Travelers, and Cheryl Goodwine-Pittman ("Ms. Goodwine-Pittman") took over as head of the Ceded Reinsurance Claims Department. (Id. at 14-15.)  Several months later, Plaintiff began reporting directly to Roger Woody ("Mr. Woody"), who in turn reported to Ms. Goodwine Pittman.[1] (Id.)  Mr. Woody and Ms. Goodwine-Pittman are both African-American. (Id. at 44.)

---

[1] Plaintiff testified that Mr. Woody was an "okay" manager and that she did not have any issues with him. (Pl. Dep. 19-20.)

2

B.   Plaintiff's Unexcused Absences

Throughout her employment, Plaintiff was counseled on numerous occasions about issues relating to her tardiness, attendance and work product. (Id. at 16-18, 23-27, 41-44, Ex. 1.) On August 18, 2006, Plaintiff received a verbal warning from Ms. Goodwine-Pittman concerning her unscheduled absences from the workplace. (Id. at 42-43, Ex. 1.) On September 13, 2006, after another unscheduled absence, Plaintiff received a formal written warning on this subject. (Id. at 41-43, 46, Ex. 1.) Specifically, the written warning documented that Plaintiff had 13 occurrences of unscheduled absences between January 2006 and September 2006. (Cohen Aff. Ex. 2.) The written warning was issued by Vice President Nick Licato ("Mr. Licato"), who is Caucasian and, according to Plaintiff, believed to be in his 40s or 50s. (Pl. Dep. at 44-45.) Plaintiff did not contest the contents of the written warning. (Id. at 45-46.)

C.   Plaintiff's Team Birthday Party

In April 2006, Plaintiff's work team held a party at the office to celebrate her birthday. (Id. at 28). Such parties were held for each employee on his or her birthday in an effort to promote team bonding. (Id.) Plaintiff testified that the typical team birthday party lasted approximately 5 minutes and consisted of gathering in a conference room, eating cake, giving

the employee a card and wishing him or her a happy birthday. (Id.) At Plaintiff's birthday party, a non-decision-making colleague asked Plaintiff her age. (Id. at 28-29.) Plaintiff, who was turning 47, testified that she did not have a problem saying her age. (Id. at 31.) During her employment, Plaintiff never complained to Human Resources about being asked her age at the team party celebrating her birthday. (Affidavit of Diane Kurtzman, sworn to December 8, 2008 ("Kurtzman Aff.") ¶ 4.)

    D.    The NAIW Luncheon

On May 5, 2006, Plaintiff attended a National Association of Insurance Women ("NAIW") luncheon. (Pl. Dep. 31-33; Kurtzman Aff. ¶ 5.) Although the luncheon concluded mid-afternoon--before the end of the regular workday--Plaintiff went straight home and did not return to work. (Id.) As a result of her failure to return to work after attending the NAIW luncheon, Plaintiff was required to use a half day (4 hours) from her paid time off ("PTO") bank. (Pl. Dep. 38; Kurtzman Aff. ¶ 5.) Despite being required to use a half day of PTO, Plaintiff received her full salary for that day. (Kurtzman Aff. ¶ 5.) Plaintiff's African-American colleague, Wynsome Bramwell ("Ms. Bramwell"), also attended the NAIW luncheon. (Pl. Dep. 33-34.) Unlike Plaintiff, after the NAIW luncheon, Ms. Bramwell returned

to the office and worked the remainder of the day. (Kurtzman Aff. ¶ 5.) Because she returned to work after the luncheon, Ms. Bramwell was not required to use any PTO for May 5, 2006. (Id.)

### E. Plaintiff's Voluntary Resignation

In or around January or February 2006, while she was still employed by Travelers, Plaintiff began looking for another job by posting her resume on various job search web sites. (Pl. Dep. at 8.) In August 2006, Plaintiff interviewed for a higher paying position with rival insurance company AIG. (Id. at 7-8.) On September 22, 2006, after approximately 19 months of employment, Plaintiff voluntarily resigned from Defendant. (Id. at 6.) Plaintiff accepted the higher paying position and began working at AIG shortly after resigning from Travelers. (Id. at 7, 9.) At the time of her resignation, Plaintiff had exceeded her yearly accrued PTO by more than 40 hours. (Kurtzman Aff. ¶ 6.) Travelers did not seek recoupment of the excess PTO from Plaintiff. (Id.)

## II. DISCUSSION

### A. Plaintiff's Claims are Untimely

All of Plaintiff's claims are time-barred. Plaintiff concedes that she did not file the Charge with the EEOC until

5

August 24, 2007, making any claims based on decisions or conduct affecting Plaintiff that occurred prior to October 28, 2006 untimely. (Pl. Dep. 55, Ex. 2.); See Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 624 (2007) (claims alleging discriminatory or harassing conduct must be filed within 300 days of the purportedly unlawful conduct); Johnson v. Nat'l Maritime Union Pension & Welfare Plans, No 95 Cov. 4112 (LMM), 1998 U.S. Dist. LEXIS 735, at *17 (S.D.N.Y. Jan. 29, 1998).[2] Because Plaintiff voluntarily resigned her employment prior to such date--on September 22, 2006--Plaintiff's claims are time-barred. (Id. at 44.)

In addition, Plaintiff's claims also fail because she failed to commence suit within 90 days of receiving a right-to-sue letter from the EEOC. Plaintiff's right-to-sue letter is dated September 11, 2007, and it is presumed to have been mailed on that date. (Pl. Dep. 56, Ex. 3); see Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 148 n.1 (1984). It is further presumed that Plaintiff received the right-to-sue letter within 3 days (i.e., by Friday, September 14, 2007.) See Baldwin, 466

---

[2] The newly enacted Fair Pay Act, which amends 42 U.S.C. § 2000(e)-5(e)(3), supercedes Ledbetter only as it relates to the timeliness of discriminatory compensation claims, which Plaintiff has not asserted here. See e.g., Mikula v. Allegheny County of Pennsylvania, No. 07-4023, 2009 U.S. App. LEXIS 6281, at *5 (3d Cir. Mar. 10, 2009); Leach v. Baylor College of Med., 2009 U.S. Dist. LEXIS 11845, at *50 (S.D. Tex., Feb. 17, 2009).

U.S. at 148n.1. The Complaint, however, was not filed until December 14, 2007--one day after the 90-day limit within which Plaintiff was required to commence suit.

B.   Plaintiff's Claims Are Without Merit

At her deposition, Plaintiff identified two incidents she experienced during her employment that she alleges demonstrate age and/or racial bias on the part of Defendant.  Specifically, Plaintiff alleged that:  (i) she was subjected to a comment by a non-decision-making colleague that she believed was age-related; and (ii) she was treated less favorably than a purportedly similarly situated African-American colleague in that she was required to use a half day of PTO for failing to return to work after attending an industry luncheon.³ (Pl. Dep. 28-37.)  As

---

³ Plaintiff also testified about several additional incidents that form the basis of her lawsuit. Specifically, Plaintiff testified that:  (i) her bereavement days were erroneously classified as PTO; (ii) she received a written warning in response to her taking unplanned vacation days; and (ii) job responsibilities were removed from her after she made a mistake. (Pl. Dep. 25-27, 39-47.)  Notably, Plaintiff does not deny that the mistake relating to her bereavement days was ultimately corrected by Defendant, and, thus, such error is irrelevant here.  (Id. at 40-41.)  Similarly, Plaintiff does not deny taking unplanned vacation days or making the mistake that led to the removal of her job responsibilities. (Id. at 25-27, 41-46.) Further, Plaintiff does not contend that the removal of her job responsibilities constituted a demotion and she concedes that her salary was not negatively impacted by the removal. (Id. at
(cont'd on next page)

discussed below, Plaintiff cannot establish a prima facie case of discrimination with respect to either incident.

### i. The Age-Related Comment

Concerning the age-related comment, Plaintiff complains that while attending a team party in celebration of her 47th birthday, she was asked her age by a non-decision-making colleague, Alicia Rockwell ("Ms. Rockwell").[4] (Pl. Dep. 28-31.) Significantly, Plaintiff testified that she did not have a problem saying her age and, more importantly, that no actions were taken against her thereafter based on her age. (Pl. Dep. 30-31.) Because Plaintiff cannot identify any adverse treatment that she allegedly experienced related to her age generally--or to this incident specifically--Plaintiff cannot establish a prima facie case of age discrimination. See Faul v. Potter, No. 06 Civ. 1169, 2008 U.S. Dist. LEXIS 89841, at *8-10 (N.D.N.Y. Nov. 5, 2008)(dismissing plaintiff's retaliation claim for failure to establish an adverse action).

---

(cont'd from previous page)

27-28.) Most significantly, Plaintiff does not allege that any of these "incidents" was in any way related to her age or race. (Id. at 25-27, 39-47.) Accordingly, they are irrelevant.

[4] Although Plaintiff contends that Ms. Rockwell is a supervisor, she admits that Ms. Rockwell had no supervisory authority over her. (Pl. Dep. 29.) Moreover, like Plaintiff, Ms. Rockwell reported to Ms. Goodwine-Pittman. (Id.)

8

In sum, this incident--which is nothing more than an innocuous inquiry by a colleague at a celebration for Plaintiff's birthday--does not constitute an adverse action. Thus, Plaintiff's age discrimination claim fails as a matter of law.

### ii. The Required Use of PTO

The Second Circuit defines an adverse employment action as a "materially adverse change" in the terms and conditions of an individual's employment. See Galabya v. New York City Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be materially adverse, Plaintiff's working conditions must undergo a change "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). Employment actions--such as that alleged here--that do not materially adversely affect the terms and conditions of a plaintiff's employment simply are not actionable under the relevant anti-discrimination laws.

Here, although Plaintiff was required to use a half day of PTO for failing to return to work after leaving the NAIW luncheon, she still received her full day's salary for the day

9

in question.[5] (Kurtzman Aff. ¶ 5.) Further, at the time of her resignation, Plaintiff had exceeded her yearly accrued PTO by more than 40 hours. (Id. at ¶ 6.) Defendant, however, did not elect to seek recoupment of this amount upon Plaintiff's resignation. (Id.) Thus, in reality, Plaintiff did not lose any PTO due to her failure to return to work after the luncheon. Therefore, Plaintiff cannot establish that the deduction of her PTO had any impact--much less a materially adverse impact--on the terms and conditions of her employment. See Faul, 2008 U.S. Dist. LEXIS 89841, at *10 (finding proposed suspension does not constitute an adverse employment action); Baptiste v. Cushman & Wakefield, No. 03 Civ. 2102 (RCC), 2007 U.S. Dist. LEXIS 19784, at *25 (S.D.N.Y. Mar. 7, 2007)(finding denial of vacation leave does not rise to the level of adverse employment action.) Accordingly, because Plaintiff did not suffer an adverse action, her race discrimination claim also fails as a matter of law.

In any event, even if such required use of PTO were deemed an adverse employment action, Plaintiff has not established disparate treatment. Specifically, Plaintiff alleges that she was required to use a half day of PTO for failing to return to work after the NAIW luncheon whereas Mrs. Bramwell, who also

---

[5] This was appropriate use of PTO, which is intended to be used for an employee's time away from work. (Kurtzman Aff. ¶ 5.)

attended the luncheon, was not required to use such time. (Pl. Dep. 33-34; Kurtzman Aff. ¶ 5.) Plaintiff speculates (incorrectly) that Ms. Bramwell did not return to work after the luncheon.[6] Plaintiff and Ms. Bramwell are not similarly situated in this instance because, unlike Plaintiff, Ms. Bramwell did return to work following the NAIW luncheon. (Kurtzman Aff. ¶ 5.) Thus, Plaintiff cannot use their alleged disparate treatment to establish an inference of race discrimination. See, e.g., Anderson v. Anheuser-Busch, Inc., No. 00 Civ. 7089, 2000 U.S. App. LEXIS 23763, at *3-4 (2d Cir. Sept. 19, 2000)(affirming summary judgment on ground that employees were not similarly situated to plaintiff because they did not engage in same misconduct).

Plaintiff has also failed to proffer any cognizable evidence of pretext with respect to this claim.

### iii. Plaintiff Has Proffered Neither Allegations Nor Evidence of a Hostile Environment

To establish a claim of hostile work environment, Plaintiff must demonstrate that: (i) she is a member of a protected

---

[6] Plaintiff herself admits that she does not know whether Ms. Bramwell returned to work after the luncheon. (Pl. Dep. 39, 60-61.)

group; (ii) she was the subject of unwelcome harassment; (iii) the harassment was based upon her age or race; and (iv) the harassment was severe and pervasive in that it affected a term, condition or privilege of employment. See Cosgrove v. Sears Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir. 1993), aff'd without opinion, 104 F.3d 355 (2d Cir. 1996). Plaintiff must show "more than just isolated incidents or casual comments that express harassment or hostility." Babcock v. Frank, 783 F. Supp. 800, 808 (S.D.N.Y. 1992). Additionally, Plaintiff must show that the harasser's actions should be imputed to the employer. See Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003), cert. denied 540 U.S. 1016 (2003). As demonstrated below, Plaintiff cannot show these necessary elements, and, thus, her hostile work environment claims fail as a matter of law.

To begin, Plaintiff cannot establish a claim for hostile work environment because she does not even allege any harassing conduct. Rather, Plaintiff simply contends that she worked in an "uncomfortable" and "negative" environment and that "it just was not a good place to work." (Pl. Dep. 30; 47-49). Specifically, Plaintiff's testimony concerning the existence of a hostile work environment is as follows:

> Q: I think you also claimed that there was a hostile environment. What do you mean by there was a hostile environment?

12

> A: From the time of, I would say after Cheryl had
> assumed the management responsibilities or the
> overall responsibility for the team and began
> moving the teams around, people had begun to
> leave and what had happened is the complete
> overall make-up of the group was changing and as
> people were leaving and I assume different
> things had gone over, whomever, it became a very
> negative place to work. So that made it
> difficult. There were no efforts made to try to
> get past it or to communicate, or to make things
> any better. Everybody pretty much just minded
> their own business and had had done their
> work. There was no effort to, you know, just
> work assignment, take an interest going again -
>
> Q: This was for the entire department?
>
> A: The entire, our team. There was really no
> interest in any type of any additional training
> or anything like that so people were becoming
> very disgruntled and very upset.

(Pl. Dep. 47-48.) It is amply clear from Plaintiff's own testimony that she is unable to articulate any harassing behavior whatsoever, much less any that bears a connection to her age or race. See Ponniah Das v. Our Lady of Mercy Med. Ctr., No. 00 Civ. 2574 (JSM), 2002 U.S. Dist. LEXIS 7771, at *22 (S.D.N.Y. Apr. 29, 2002), aff'd, 2003 U.S. App. LEXIS 1213 (2d Cir. Jan. 23, 2003)(finding that comments unrelated to protected category fail to support discrimination claim).

Plaintiff further undermines her allegations of "harassment" by admitting that Ms. Goodwine-Pitman treated the

13

entire team, which was comprised of employees of mixed ages and races, in the same distant manner. (Pl. Dep. 19-23, 44-45, 49.) Plaintiff's chief complaint against Ms. Goodwine-Pitman is that she was "cold" and "gruff at times" and Plaintiff at no point alleges such treatment was based upon Plaintiff's age or race. (Pl. Dep. 20.) It is well-settled that the anti-discrimination laws are not intended to serve as a general civility code and that personal animosity is simply not prohibited by these laws. See Pergament v. Federal Express Corp., 03 Civ. 1106 (ENV)(AKT), 2007 U.S. Dist. LEXIS 23732, at *52 (E.D.N.Y. Mar. 30, 2007); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 309-310, 786 N.Y.S.2d 382, 394 (N.Y. 2004)(citing Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)). Accordingly, because the alleged "harassment" bears absolutely no connection to Plaintiff's age or race, her hostile work environment claims fail as a matter of law.

III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [dkt. no. 13] is GRANTED.  The Clerk of the Court shall mark this action closed and all pending motions denied as moot.


SO ORDERED:

Dated:   New York, New York
         August 7, 2009

_____
LORETTA A. PRESKA, U.S.D.J.